Argued 9 January; decided 27 January, 1902.

## FELLER v. GATES.

[56 L. R. A. 630, 67 Pac. 416.]

OFFICIAL BONDS—LIABILITY OF SURETIES THEREON.

The sureties on the bond of a public officer are not liable for his acts done in a private capacity and in violation of his official duty; for example, the act of a constable in receiving money from an execution debtor under a contract not to serve an execution against the debtor, and to repay the money if the judgment should be reversed on an appeal, being beyond his powers and a violation of his duty, the sureties on his official bond are not liable to the execution debtor for his conversion of the money.

From Marion:   GEO. H. BURNETT, Judge.

Action of conversion by Francis Feller against John H. Gates and others commenced in March, 1900, to recover from a constable and the sureties on his official undertaking the sum of $126.40, alleged to have been received by virtue of his office and converted to his own use.   The complaint alleges, in substance, that the defendant John H. Gates was duly elected constable of the district of Woodburn, Marion County, Oregon, for a term of two years, beginning on the first Monday in July, 1898, and that prior thereto he took the prescribed oath of office, and filed an undertaking, with his codefendants, W. Corby and L. W. Guiss, as sureties, conditioned that if he should not faithfully execute the trust imposed upon him as said constable, and pay over according to law all moneys that might come into his hands by virtue of his office, they, or either of them, would pay the State of Oregon the sum of $1,000, which undertaking having been duly approved, Gates entered upon the discharge of the duties of his office, and was at the commencement of this action constable of said district; that Angie L. Feller, having commenced an action in the justice's court of said district against the plaintiff herein and others, secured a judgment therein November 21, 1899, for the sum of $116.40, and, an execution having been issued thereon, it was delivered to said constable, who, by virtue of his office, and in pursuance of said writ, threat-

ened to collect said sum from this plaintiff; that, in order to stay said execution and prevent further costs thereon, and to gain time to take and perfect an appeal from said judgment, plaintiff herein paid Gates the sum demanded in said writ, and $10 claimed by him as costs thereon, which sum was received in lieu of an undertaking on appeal, to be returned if plaintiff herein should, within the time prescribed by law, serve and file a notice of appeal from said judgment, and execute and file a proper undertaking therefor; said agreement being as follows:

"In the Justice's Court for Woodburn District, Marion County, Oregon.

Angie L. Feller, Plaintiff,
       v.
W. F. Feller, Francis Feller,
.and Henry Bock, Defendants.

Received of Francis Feller $126.40 cash in lieu of an undertaking on appeal in the above-entitled court and cause, and to stay execution in judgment against defendants above-named until said cause is fully determined upon appeal in the Circuit Court of Marion County. It being understood that said money is not to be applied upon or towards the payment of said judgment, and that said money will be returned to Francis Feller upon his filing with the justice of the above-named court a sufficient undertaking, and making service of notice of appeal on plaintiff in said cause within the statutory time.
    Dated November 28, 1899.
                              J. H. GATES,
                       Constable for Woodburn District,
    Witness:  F. G. EBY.         Marion County, Oregon."

It is alleged that, within the time prescribed by law, plaintiff served and filed a proper notice of appeal, and executed and filed a suitable undertaking therefor, fully complying with all the conditions of said deposit, and on January 29, 1900, the circuit court for Marion County, having jurisdiction of the cause and parties, reversed said judgment so rendered by said justice's court; that on January 10, 1900, plaintiff demanded of Gates said sum of $126.40, but he, refusing to pay

any part thereof, wrongfully converted the same to his own use, and that on February 2, 1900, upon a proper application therefor, plaintiff secured permission to begin this action, wherefore he demands judgment against said constable and his sureties for the sum of $126.40. Gates having answered, judgment was given against him for that sum, but Corby and Guiss demurred to the complaint on the grounds (1) that they were improper parties; (2) that the complaint does not show any act done by Gates in discharging his official duty or by virtue of his office, and is insufficient to charge them as sureties; and (3) that the complaint does not state facts sufficient to constitute a cause of action,—which demurrer was sustained, and, plaintiff refusing to plead further, the action was dismissed as to them, and he appeals.      AFFIRMED.

For appellant there was a brief over the name of *Carson & Adams*.

For respondents there was a brief over the names of *J. C. Johnson, F. G. Eby, H. J. Bigger,* and *Grant Corby.*

MR. JUSTICE MOORE, after making the foregoing statement, delivered the opinion of the court.

It is contended by plaintiff's counsel that Gates received said sum of $126.40 in his official capacity as constable, and, not having repaid it upon plaintiff's demand, the sureties on his official undertaking are liable for his conversion thereof, and hence the court erred in sustaining the demurrer to the complaint and in dismissing the action. "The sureties of a sheriff or constable," says Mr. Brandt in his work on Suretyship and Guaranty (2 ed.), § 566, "are liable for his acts in seizing property which are done *virtute officii,* but whether or not they are liable for his acts done *colore officii* is a matter concerning which there is great conflict of authority." In *People* v. *Schuyler,* 4 N. Y. 173, Mr. Justice PRATT, in defining these terms, and explaining when the sureties are liable

40 OR.—35.

for, and when exempt from, the consequences of the acts of
the chief executive and administrative officer of a county,
says: ''The authorities recognize a principle or rule by which
the acts of the sheriff, for which his sureties may be held
liable, can be distinguished from those acts for which they
will not be held liable. The former are termed 'acts done
*virtute officii'*; and the latter, *'colore officii.'* The distinction
is this: Acts done *virtute officii* are where they are within
the authority of the officer, but in doing it he exercises that
authority improperly, or abuses the confidence which the law
reposes in him, whilst acts done *colore officii* are where they
are of such a nature that his office gives him no authority to
do them.'' The allegation of the complaint is to the effect
that Gates, by virtue of his office as constable, and in pursu-
ance of the command of the execution which had been deliv-
ered to him, threatened to collect from plaintiff herein the sum
named in the writ. If this averment were not qualified by
the receipt, which is made a part of the complaint, it would
undoubtedly show a collection in pursuance of the execution,
and by virtue of his office as constable, thereby rendering the
complaint unassailable on demurrer. The receipt shows that
Gates did not intend to apply the money specified therein to
the satisfaction of the judgment against the plaintiff, but that
its acceptance was to enable the latter to take an appeal,—a
proceeding in which a constable has no right to intermeddle,
and in which he was powerless to stay the enforcement of the
judgment, which could only have been secured by giving an
undertaking conditioned that the appellant would satisfy any
judgment that might be given against him in the appellate
court on appeal, and upon the filing of such undertaking the
justice rendering the judgment would have recalled the exe-
cution: Laws, 1899, p. 109, §§ 42-44. It was incumbent,
therefore, upon Gates to execute the command of the writ
delivered to him, and, if necessary, to levy upon and sell the
personal property of the judgment debtors, so that he might
make the sum demanded, on or before the return day, for the
benefit of the judgment creditor, whose agent he was for that

purpose: Freeman, Executions (2 ed.), § 283. Instead of discharging the obligation imposed upon him by law, he agreed to repay to plaintiff herein the money so received, when an appeal from the judgment should be taken and perfected; thus manifestly stipulating to violate his trust. The promise of the constable to repay the money upon the performance of the stipulated condition necessarily shows that it was not received even under color of office; for, to render the payment a collection *colore officii,* the party making it must part with the title to the money, relying upon the right of the officer to receive it in trust for the adverse party. The receipt conclusively shows that the plaintiff herein did not intend to part with the title to the money, or expect the constable would pay any part of it to the judgment creditor, so that Gates received it in his private character, in trust for plaintiff, and not by virtue or even color of his office.

It remains to be seen if the sureties on his official undertaking are liable for the acts of their principal on account of money so received. In *Governor* v. *Perrine,* 23 Ala. 807, it was held that when a sheriff has taken property under attachment, which he afterwards sells by agreement between the plaintiff and defendant in attachment, without an order of court, his sureties are not liable on their bond for his failure to pay over the money. Mr. Justice GIBBONS, speaking for the court in deciding the case, says: "The sale of the goods having taken place without any order of court, or authority to the sheriff to make the sale, but being made by the consent of the parties in the attachment suit, it could not be said to be an official act of the sheriff, but rather that of a private individual as the agent of the parties to the suit. The securities of the sheriff are only liable for his defaults while acting in his official capacity; and that has been defined to be, action in obedience to legal process in his hands." In *Schloss* v. *White,* 16 Cal. 65, the plaintiff and defendant, a sheriff, entered into an agreement in respect to the sale of attached property so similar to the contract evidenced by the receipt in the case at bar that we quote copiously therefrom: "It seems that plain-

tiff sued out attachment against one Kalkmann, and had it
levied on some goods. Other creditors issued similar process,
also levied on the same goods. Afterwards the plaintiff dis-
missed his proceeding, and claimed that the goods levied on, or
a part of them, were his own property; they having been pro-
cured by Kalkmann by false pretenses. The plaintiff sued the
sheriff in replevin. He did not take the goods out of the
sheriff's possession, but came to an arrangement with the
sheriff whereby the sheriff agreed to sell the goods, and keep
the proceeds to answer the judgment, if the plaintiff obtained
one in his replevin suit. The sheriff sold the goods and paid
the money into court, saying nothing about this arrangement;
and the money was paid, under the order of the court, on the
claim of the other creditors. The sureties of the sheriff had
nothing to do with, and gave no sanction to, this arrangement.
The question is, are they bound to the plaintiff for the goods
or the money received from the sale, the plaintiff having ob-
tained judgment in the replevin suit? We think they are
not. It was no part of the sheriff's duty to make this agree-
ment with the plaintiff to sell the goods, and to hold the pro-
ceeds for the plaintiff in a certain event. He had no legal
authority, as sheriff, to sell these goods, and to hold the
money on bailment for the plaintiff. If the plaintiff trusted
him with the custody of the goods, and gave him authority to
sell them, he became, so far, the agent of the plaintiff, and
the plaintiff must look to him merely as his agent. He can-
not hold the sureties bound for executory contracts of this sort,
entered into without their consent. If so, there would be
scarcely a limit to their responsibility; for contracts of this
sort might run for years, and represent every variety of com-
plication. If the sheriff had retained the goods, he might
have obtained a bond of indemnity from the other creditors;
or, if the plaintiff had given bond, he might have relieved the
sheriff from the custody of the goods. But here the sheriff
assumes, by this agency, a responsibility for himself and his
sureties greater in degree and different in kind from that
imposed by law, and it would be unjust and impolitic to en-

courage such dealings by holding sureties responsible for them. It would be against law so to hold; for the sureties are entitled to stand upon the precise terms of their contract, ·by which they stipulated in this case for the official, not the personal, dealings of their principal.''

In the case at bar the contract entered into between the plaintiff and the constable was private in character, and presumably for their mutual benefit; and as the sureties may properly invoke the rule of *strictissimi juris* (Murfree, Sher. § 82), thereby rendering them liable only for official acts (*Hill* v. *Kemble,* 9 Cal. 71; *State* v. *Mann,* 21 Wis. *684), it follows that the judgment is affirmed.          AFFIRMED.