Christopher C. Walling, as Principal and American Surety Company of New York, as Surety, *Plaintiffs in Error,* v. Doyle E. Carlton, Governor of the State of Florida, Successor to John W. Martin, for the use of Santa Rosa County, Florida, *Defendant in Error.*

147 So. 236.

Opinion filed March 16, 1933.

98

*McGeachy & Elliott,* for Plaintiffs in Error;

*L. F. Caldwell, Jr.,* and *John T. Wigginton,* for Defendant in Error.

BUFORD, J.—This case is before us on writ of error to judgment entered against a constable and the surety on his bond in a suit to recover defaults of the constable and the wrongful conversion of funds coming into his hands as such officer.

It is contended here that some part of the recovery was for funds coming into the hands of the constable which he had no lawful authority to collect and it is further contended that a part of the recovery is for costs which were not at the time of the entry of the judgment entered in the judgment in specific sums, but which sums were entered later by the County Judge or Justice of the Peace to make the record of the judgment recite the judgment which was pronounced by the court.

We think it wise to recite here the finding and judgment

of the learned Circuit Judge as disclosed by the record to give the bench and bar a clear understanding of just what was involved in this case. Therefore, we quote:

"This cause was submitted to the Court, sitting as a judge of law and fact, in vacation, by stipulation of counsel.

"Some testimony was taken in the presence of the court, but most of the facts are submitted to the court upon an agreed statement.

"From the testimony taken and the agreed statement the following facts may be said to be fairly admitted:

"That one C. C. Walling was duly elected, qualified and acting Constable of Justice District No. 1, of Santa Rosa County, Florida, and that the defendant American Surety Company of New York was the surety upon the official bond of such constable, during the happening of all of the events upon which plaintiff relies for judgment; and that the bond was in the usual form prescribed by law, and was in full force and effect at all times material to this controversy.

"That such constable arrested numerous persons for various infractions of the criminal laws of Florida, triable in the County Judge's Court, and Justice of the Peace Court for District No. 1 of Santa Rosa County, Florida, a detailed list of which is given in testimony; that as to the cases of those persons referred to in the testimony, the said Walling brought before the court for trial, and was present at the trial of and acted as the executive officer of the Court during the trial, conviction and sentence of such persons; and that they remained in his custody until committed, or until they satisfied the judgment and sentence by payment, or executed fine and cost bond.

"That the imposition of sentence in each case was made informally, and the practice, both in the County Judge's Court and in the Justice Court, was for the presiding judge or justice to assess the fine and costs, but the actual taxing

of the costs in the written judgment was not made until later, and the customary practice was to inform the constable of the amount of fine, and of the amount of the costs taxed on behalf of the judge or justice, leaving the ascertainment of the constable's costs and the costs of the prosecuting attorney to the constable, who tabulated the various amounts of costs, added these to the fine, and collected the total of fine and costs from the convicted person; such final tabulation of costs was ordinarily adopted by the judge or justice as the costs to be taxed in the case, and were so reported to the county commissioners in each case, and also reported by the constable in the same amounts to the county commissioners. The monthly reports of the constable of the collection of fine and costs, made to the county commissioners, from the basis of the calculations used by plaintiff to determine the amount of his alleged defalcations. It is evident that the taxation of costs by the judge was made from information received from the constable, and the inference is unavoidable that such taxation was made informally, and probably in every case here involved after the accused and convicted prisoner had either paid the fine and costs or made fine and costs bond. It is evident that in such instances as the constable did not receive payment of fine and costs immediately, or the prisoner failed to make fine and costs bond immediately, instead of holding the prisoner in his personal custody for the period of twenty-four hours provided by statute, it was his practice to commit the prisoner to the county jail, without, however having a formal written commitment from the judge or justice, these written commitments, it appearing from the evidence, being in every case turned over to the sheriff of the county by the judge or justice presiding, although directed 'To all and singular, the sheriff or any constable of said county.' No warrant, capias, execution or any other

like process requiring the constable or sheriff to execute the judgment was ever delivered to either officer.

"It appears that the actual entry of the amount of costs taxed, in the County Judge's Court was not made upon the judgment dockets of that judge, until the day of the taking of testimony, at which time such judge corrected his judgments by entering the costs ascertained in the manner above indicated; and that in the justice court, the justice, through error or misunderstanding, entered in the blank provided in the form of judgment for the taxation of costs only the justice's costs, but that actually in the informal judgment and sentence rendered against each prisoner, the total costs in each case was assessed, but left to be ascertained in the manner above indicated; this, while technically irregular, the Court has not considered as of material consequence; believing that although the mental and physical processes of taxing the costs were those of the constable, for all practical purposes the taxation of costs was the act of the judge or justice, as the case was, and that neither Walling nor his surety can take advantage, after collection by the constable of all the costs, of this informality or irregularity.

"The facts further show that the total amount admitted by the Constable, Walling, to have been collected by him for fines and costs, and on fine and costs bonds given to secure the payment thereof, is $1325.97. It is apparent from the agreed statement that of this sum, fines and costs of prisoners actually turned over by the constable to the sheriff totalled $348.72, this amount being determined from tabulations in the agreed statement of $121.59, $74.43 and $123.82, totalling $319.84; plus the amount of the fine and costs assessed against Jewell Calloway, which does not appear in the tabulation of these three amounts, but it is admitted that Jewell Calloway was receipted for by the warden of the county farm to the sheriff, which indicates that the sheriff

did have custody of this prisoner. The amount of this fine and the costs totalled $28.88, making the total of all in the sheriff's custody $348.72, as stated above.

"The agreed statement further shows that fine and costs bonds were executed by prisoners, the fines and costs of whom totalled $488.75, but that from this amount should be deducted the fine and costs assessed against Dexter Cawthon, who, it is apparent made fine and costs bond after he was placed in the custody of the sheriff and it is assumed, for the purpose of this controversy, that the constable had no further authority to act as respects this prisoner. The bond in this case was for a fine and costs assessed totalling $17.44, leaving $471.31 for a total amount of fine and costs bonds executed by prisoners of whom the constable retained custody after conviction, and which it is assumed were executed within twenty-four hours after conviction and sentence, and while the constable still retained custody of the prisoner.

"By adding the total of the tabulations of the last two paragraphs, $348.72 and $488.75, or $837.47, and deducting this figure from the total amount admittedly unaccounted for by Walling, $1325.97, it is evident that Walling collected fines and costs totalling $488.50 from prisoners immediately after the penalties were assessed in cases where such prisoners were not imprisoned in the County Jail, and did not make bonds for the amount of fine and costs assessed against them.

"It is the evident intention of our statutes (Section 8444, Compiled General Laws, 1927), that all payments of fines and costs assessed shall be made either to the Judge or justice presiding, or to the sheriff after commitment. The conclusion is inescapable that any collection made by the constable during the period of twenty-four hours during which, as executive officer of the court, the convicted pris-

oner might lawfully be retained by him in his custody, could not be said to have been collected by him either by virtue of his office or under color of his office.

"As to the amount collected by Walling as constable representing the amount of bonds for fine and costs, a different situation arises; under the statute (Section 8426, Compiled General Laws, 1927) 'persons convicted of crimes, who shall have a pecuniary fine or sum of money assessed or adjudged against them as punishment therefor, shall have the right on being taken into custody by the proper officer of the court, to give bail for the payment of such fine and costs of prosecution. Such bail shall be by bond—to be approved by the court, if in session at the time; otherwise by the sheriff or *other officer charged with the execution of the judgment.'* And Section 8427 provides: 'The bond shall be payable in ninety days—and if not paid—the sheriff or *other officer aforesaid* shall endorse, etc.' And Section 8443 provides that 'The judgment shall be executed by the sheriff or any constable of the county'—by virtue of a warrant under the hand of the justice who held the court.

"As has been said, no warrant was issued in any case by the judge or justice, but the statutes seem clearly to contemplate that the constable may be one of the proper officers to execute the judgment; and the irregularity on the part of the judge or justice in not issuing a warrant to the constable will not serve to release either the constable or his surety from liability; viewed in this light, it seems to the court that the constable was justified in taking and approving bonds for the payment of fine and costs; and it is evident from the wording of the statute that after the taking and approval of the bond, the constable kept the custody of the bond and collected the fine and costs for which it was given as security, and upon his failing to account therefor

to the county, both he and his surety are liable for his failure to account therefor.

"As to the first and third counts of the declaration, there is a fatal variance between the pleadings and the proof; each of these counts allege the issuance directed to the constable, of a commitment; the proof is that the commitments were issued, but delivered to the sheriff, and were directed also to the sheriff and were never in the hands of the constable; this is 'a material variance as the defendant could not be called upon to defend the action upon a totally different theory advanced by the plaintiff that the voluntary escape was permitted during the twenty-four hours allowed under the statute, during which the prisoner was properly in the custody of the constable prior to commitment; however, in view of the holding of the court under the second count, this is immaterial, unless plaintiff desires 'to amend in the particular suggested, in which event defendant will be allowed to offer further pleadings and proof as it may be advised.

"Judgment will be entered against C. C. Walling, the defendant, for the full amount of the sum admittedly not accounted for by him, $1325.97, and against American Surety Company of New York for the sum of $471.31, with interest as to each defendant from date of suit.

"This April 2nd, 1932.

"L. L. FABISINSKI, Circuit Judge."

We find no error in the foregoing findings and judgment.

The record shows that the constable assumed to collect and did collect the sums of money mentioned in the foregoing findings under color of his office and it is immaterial whether he was in fact authorized to collect the money or not. The law appears to be well settled that for improper acts performed by an officer under color of his office the sureties upon his bond can be held liable and certainly the

officer himself may be held liable. See State v. Wedge, 24 Minn. 150; Hall v. Tierney, 89 Minn. 407, 95 N. W. 219; State v. Leech, 60 Me. 58, 11 Am, Rep. 172; Turner v. Sessions, 137 Mass. 191. See also annotation appearing in 46 Am. Dec. 509.

In the case of Turner v. Sessions, *supra,* the court said:

"By an official act is not meant the lawful act of an officer in the service of process for if this were so his sureties would never be responsible. It means any act done by the officer in his official capacity under color and by virtue of his office."

In Hall v. Tierney, *supra,* it was held:

"The object of the official bond is to obtain indemnity against the misuse of an official position for wrong purposes and that which is done under color of office and which would obtain no credit, except for its appearing to be a regular official act, is within the protection of the bond and must be made good by those who signed it."

The contention that the correction of the judgments so as to make the amount of costs appear therein was invalid is not tenable. The rule is, "If anything has been omitted from the judgment which is necessarily or properly a part of it, and which was intended and understood to be a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court, or counsel, or the clerk, the omission may be supplied by an amendment, even after the term." 34 C. J. 235: See also Nichols v. Walton, 82 Fla. 385, 90 So. 157; McGriff v. Read, 37 Fla. 51, 19 So. 39.

We may say, however, that it is immaterial whether the collections were authorized or not, if, as a matter of fact, the constable assumed to collect and did collect, the amount of the costs and converted the same to his own use.

There is a further contention that the court committed error in entering a judgment for one amount against the

principal and another amount against the surety. The surety bond was only for the sum of $500.00. The court did not enter judgment for the full amount of the bond as against the surety, which it might well have done under the facts as disclosed by the record. The surety cannot complain that the court did not enter judgment against it for as great a sum as it might have entered. Neither can it complain that judgment has been entered against the principal for a larger sum than that for which it was liable under this bond.

The record sustains most amply the finding of the court as to the amount recoverable against the principal and he cannot complain that the court entered a judgment for a part of this amount against the surety. If the surety pays the amount of the judgment against it, then the judgment against the principal will be reduced in an equal sum. Each gains an advantage by judgment being entered against the other.

For the reasons stated, the judgment should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.