68 P.(2d) 162

STATE v. ROY et al.

No. 4171.

Supreme Court of New Mexico.

May 10, 1937.

Francis C. Wilson and John T. Watson, both of Santa Fé, for appellants.

Frank H. Patton, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

BRICE, Justice.

This is an action by the State against the appellants (defendants below) Roy and American Surety Company of New York, surety on his official bond as collector of delinquent taxes; to recover a sum of money claimed to be due the State of New Mexico. The appellant American Surety Company (hereafter styled surety company) demurred to plaintiff's complaint, which was overruled by the court. The surety company stood upon its demurrer and judgment was entered for the plaintiff. The question is whether the allegations of fact in the complaint state a cause of action. They are in substance as follows:

The defendant Roy was appointed delinquent tax collector for the county of Harding in 1927 and thereafter duly qualified. The defendant surety company was surety on his official bond, which is in form as required by section 141-446, N.M. Comp.St.1929, in the penal sum of $3,000.

In the year of 1928 the county treasurer of Harding county collected prior to delinquency and during the year of 1928,

approximately $3,500 from the tax payers for 1927 taxes; and erroneously remitted such sum to the State Tax Commission of the State of New Mexico. The defendant Roy, by virtue of and under color of his office as delinquent tax collector, claimed, and by mistake was paid by the State Tax Commission, the sum of $1,755.54 as his fee for the collection of said taxes. Learning of the mistake, the State Tax Commission returned to the treasurer of Harding county the $3,500 and thereafter demanded and received from said treasurer the sum of $1,755.54 to reimburse the State Tax Commission for the money it had paid to the defendant Roy. The treasurer of Harding county was directed by the State Tax Commission to collect from defendant Roy the $1,755.54, which it had erroneously paid him. Fees owed to the defendant Roy for delinquent tax collections, to the extent of $616.64, were withheld by the State Tax Commission and applied as part payment of the $1,755.54, leaving a balance unpaid of $1,038.89; which defendant Roy improperly retained and never accounted for to the State or the county of Harding, nor has such amount ever been paid by either of the defendants, or at all. By reason of the execution and delivery of said public official bond and of the breach of its condition, the State of New Mexico has been damaged in the sum of $1038.89, and interest.

The office of delinquent tax collector occupied by the defendant Roy was created by chapter 127 of N.M. Session L. 1927, which was in effect an amendment of previous tax laws. The statutes material to a decision of this case are as follows:

"For the purpose of carrying out the powers and duties conferred by this act on the state tax commission in the matter of collection of delinquent taxes the commission is hereby authorized and empowered to employ or use for each county of the state an officer to be known as 'delinquent tax collector.'" Section 141-443, Comp.St.1929.

"The Compensation to be paid Delinquent Tax Collectors shall be as follows:

"(a) For all delinquent taxes collected for the year 1926 and thereafter 3/5 of the 10% covered into the State Tax Commission Fund, as provided in Section 416 hereof.

"(b) For all taxes collected by said Delinquent Tax Collector, for the years 1925 and prior thereto, such proportion of the 10% as provided by Section 489 hereof as may be agreed upon by contract between the Commission and such Delinquent Tax Collector." Section 487 Sess.L.1927, c. 127; since amended (section 3, chapter 6 N.M.Sess.L.1929, Sp.Sess.)

"Every delinquent tax collector * * * shall take and subscribe to an oath of office and give a surety company bond in such sum as the commission shall prescribe for the faithful performance of his duties, which oath and bond shall be filed in the office of the commission." Section 141-446, N.M.Comp.St.1929.

"Thirty days after this act becomes effective 10% of all delinquent taxes for the years 1925 and prior thereto, when collected, shall be by the county treasurer paid to the state treasurer of the state of New Mexico and by such treasurer of the state covered into the state tax commission fund to be used by the state tax commission as provided by law." Section 141-447, N.M.Comp.St.1929.

"Delinquent taxes shall be paid to the county treasurer, and no such taxes shall be satisfied or discharged except by the receipt of the county treasurer, or by decree of court, or as otherwise provided by law." Section 141-453, N.M.Comp.St.1929.

"All moneys collected and not distributed or that may be collected by the treasurers of the several counties by suit or otherwise on account of delinquent taxes, shall be distributed as follows:

"That portion of such taxes levied for state purposes shall be paid to the state treasurer and covered into the state general fund; all of the remainder shall be covered into the respective funds entitled thereto as of the date of the levy thereof, if such fund or funds be in existence, otherwise into the general county fund, excepting where such delinquent taxes be subject to payment of a judgment rendered by a court of competent jurisdiction." Section 141-436, N.M.Comp.St.1929.

■ It is quite plain from these statutes that there was no authority for the county treasurer of Harding county to remit any portion of the taxes (delinquent or not) to the State Tax Commission Fund, except that provided for by section 141-447, N.M.Comp.St.1929, supra. Therefore the State Tax Commission correctly returned the amount to the treasurer of Harding county. This collection was made of 1927 current taxes and not delinquent taxes; so no part should have been remitted to the credit of the State Tax Commission Fund.

■ It is agreed by the parties that the defendant Roy had no commission due him out of this collection. The State Tax Commission erroneously remitted to Roy the $1,755.54, and the county treasurer erroneously remitted to the credit of the State Tax Commission Fund an equal amount upon its demand. The payment of this money to Roy was an error of the State Tax Commission, not of the county treasurer, and it should not have been reimbursed from the treasury of Harding county. It is now indebted to the treasurer for $1,039.89 balance due, and the defendant Roy is indebted to the State Tax Commission in an equal amount. Appellant is in error in stating that it was the duty of the county treasurer to remit delinquent taxes to the State Treasurer for the account of the State Tax Commission Fund; but only 10 per cent. thereof, as provided for in section 141-447, N.M.Comp.St.1929. It follows that this action was correctly brought by the State of New Mexico against the defendant Roy and surety on his official bond. The county of Harding has no claim against Roy or his surety.

The claim that the action was barred by limitation is based upon section 83-105 N.M.Comp.St.1929, which is as follows: "Those against sureties on official bonds and on bonds of guardians, executors, administrators and persons acting in a fiduciary capacity, within two years after the liability of the principal or the person. for whom they are sureties, shall have been · finally established or determined by a judgment or decree of the court and those brought against any county or state officer for or on account of any liability incurred in the doing of any act in an official capacity or by the omission of any official duty and for an injury to the person or reputation of any person, within three years."

This statute as originally passed was section 5 of chapter 5, N.M.Session Laws 1880, and was as follows: "Those against sureties upon official bonds and those brought against Sheriffs and other public officers for or on account of any liability incurred by the doing of any act in an official capacity, or by the omission of any official duty, and for the injuries to the person or reputation, within two years."

This was a section of a general limitation act; section 19 of which now appears as section 83-116, N.M.Comp.St.1929, and is as follows: "The above limitations and provisions shall not apply to evidences of debt intended to circulate as money; but shall, in other respects, be applicable in all other actions brought by or against all bodies corporate or politic, except when otherwise expressly declared."

The Attorney General's contention is that this statute does not apply to the State because the State is not expressly mentioned in the statute.

It is generally held that statutes of limitation do not apply to actions in behalf of the State, unless it is specifically so provided in the statute; or as otherwise stated, unless expressly provided in the statute, or unless the statute does so provide by the clearest implication. The authorities are numerous, but the following sufficiently state our views:

"Except the statute otherwise expressly provides, it cannot be set up as a bar to any right or claim of. the State, thus, it does not apply to actions in favor of the State against sureties upon bonds given for the faithful discharge of the duties of public officers, or other official bonds; nor to actions to recover debts due to the State, or to recover lands belonging to it; nor, indeed, to any class of claims in favor of the State, unless the statute expressly so provides. But this rule only applies to claims in which the State is the real party, and has no application in cases where, although a nominal party to the record, it has no real interest in the litigation, but its name is used to enforce a right which inures solely to the benefit of an individual or a corporation, municipal or otherwise. * * * As to the general and State government, the old common-law maxim nullum tempus oc-

currit regi applies with full power, unless, as previously stated, the statute otherwise expressly provides. But this rule only applies when the general government is the sole and real party in interest. * * * It makes no difference what the nature or character of the claim is, as the statute does not apply to any claim in its favor. * *" Wood on Limitations (4th Ed.) § 52, p. 157.

"As we have already shown, as a general rule, limitations do not run against the State, unless the statute expressly includes the State, or does so by the clearest implication." Wood on Limitations (4th Ed.) § 52-A, p. 166.

In State v. Board of County Com'rs, 33 N.M. 340, 267 P. 72, 73, we held that the Bateman Act, which provides that all county indebtedness is void in so far as it is not, and cannot be, paid from funds of the current year, did not apply to an indebtedness of the State. We, through Mr. Justice Watson, said: "There is no reason to suppose that indebtedness to the state was contemplated. On the same principle that statutes of limitation do not run against the state (Hagerman v. Territory, 11 N.M. 156, 66 P. 526; 27 C.J. 710 et seq.) we think that a statute declaring indebtedness void under certain circumstances should not affect indebtedness to the state, unless the state is expressly named in the statute as subject to its provisions."

■ The State is not expressly mentioned in the statute; and unless it is included by "the clearest implication," the statute does not apply to this suit; for it is one by the State to recover funds belonging solely to the State.

■ There is no necessary or clear implication that State claims are barred by this statute. Individuals and political subdivisions of the State may have claims against sureties on official bonds.

■ Appellant calls our attention to section 39-114, Comp.St.1929, which is as follows: "Any compromise, satisfaction or discharge of indebtedness prohibited by the preceding section of this article is hereby declared to be invalid, and shall not be held a bar to any suit for the collection thereof, and suit may be brought at any time within four years from the date of any such compromise, satisfaction or discharge to enforce the payment thereof, notwithstanding any existing law of limitation."

The preceding section referred to provides in substance that no indebtedness due to or claimed by "the state, any county, city, town, precinct or school district" should be compromised, satisfied, or discharged except upon payment in full of the amount due, or for which a judgment is rendered.

These statutes were passed in 1893, while the Act of 1880 was in force. The object was to exclude a special class of claims from the operation of general statutes of limitation, whether existing at the time this act was passed or subsequently enacted. It is not a necessary implication that there

existed at the time these statutes were enacted a statute of limitation applying to such claims.

We conclude that section 83-105, Comp. St.1929, has no application to actions by the State on claims in which it alone is interested.

There is a division among authorities as to whether sureties on official bonds are liable for claims of the character sued on. These differences depend generally upon whether there was a strict or liberal construction of the obligations of the sureties.

"The distinction is this: Acts done virtute officii are where they are within the authority of the officer, but in doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him, whilst acts done colore officii are where they are of such a nature that his office gives him no authority to do them." Feller v. Gates, 40 Or. 543, 67 P. 416, 417, 56 L.R.A. 630, 91 Am.St. Rep. 492.

If a surety is only liable for wrongful acts of its principal, done virtute officii only, following the view that official bonds are to be construed strictly in favor of the surety, then the case should be reversed; but if sureties are liable for wrongful acts done colore officii, and the claim sued on is one that comes within such classification and within the terms of the bond or statute fixing its terms, the case should be affirmed.

This court, in State v. Llewellyn et al, 23 N.M. 43, 167 P. 414, 424, in construing the bond of the secretary-treasurer of the New Mexico College of Agricultural & Mechanical Arts, stated: "The rule exempting sureties from liability, for acts colore officii, was doubtless adopted by many of the courts before the advent of surety companies, whose business it is, for a stipulated compensation, to guarantee the fidelity of officers and employees. The obligation of sureties was then ordinarily assumed without pecuniary compensation, and was not extended by implication or construction. Their liability was strictissimi juris. In this state no definite rule on the subject has been established by the courts, and we see no good reason for a departure from the apparent majority rule that the surety is liable for the acts of the principal colore officii. We believe the public interests will be more surely protected and safeguarded by the establishment of such rule here." Llewellyn, the secretary-treasurer of the college, had collected funds belonging to his principal and deposited them in a Las Cruces bank which failed. The State Treasurer was by statute made custodian of these funds, but they had been collected by Llewellyn without authority of law. A strict construction of the obligation of his surety would have released it, because the funds were not held by virtue of his office. But as the funds were held under color of his office, his surety was held liable for the loss, following the liberal rule of construction.

Roy obtained the money sued for by making a claim as delinquent tax collector for fees he was not entitled to receive. Except for the claim made as such official, such funds would not have been paid to him. The funds belonged to the State, and its delivery to him by the State Tax Commission did not change ownership and at this time the appellant's principal has funds belonging to the State, for which he has not accounted.

The case of Quaw v. Paff, 98 Wis. 586, 74 N.W. 369, 370, is quite similar. A taxpayer brought a suit in his own behalf, and in the behalf of all other taxpayers of the county, against a county treasurer, to declare a trust in funds wrongfully collected for services the treasurer claimed to have performed. The board of supervisors had allowed the treasurer pay for extra labors, on bills filed by him. The court, after holding his salary covered all remuneration authorized by law for his labors, stated: "All services performed, which are within the scope of his official duties, or which are voluntarily performed as such officer, by request or otherwise, are, in contemplation of law, covered by his official salary. [Authority.] Though he may by some means obtain possession of public funds as additional compensation, and by permission of the governing body of the corporation, the title of the money thus obtained does not thereby change from the public to him. He thereby places himself in the position of one holding money to which he has no right, and which, by every principle of legal and equitable duty as well, he is required to return to its rightful owner and possessor."

In Walling et al. v. Carlton, 109 Fla. 97, 147 So. 236, 239, it was said: "The record shows that the constable assumed to collect and did collect the sums of money mentioned in the foregoing findings under color of his office and it is immaterial whether he was in fact authorized to collect the money or not. The law appears to be well settled that for improper acts performed by an officer under color of his office the sureties upon his bond can be held liable and certainly the officer himself may be held liable. * * * In Hall v. Tierney [89 Minn. 407, 95 N.W. 219], it was held: 'The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it.'"

The condition of the bond in suit is as follows: "If the above bounden E. J. H. Roy shall from the 4th day of April, 1927, well and faithfully perform all his duties as such tax collector, during his term of office, and shall render a true account of his office and his doings therein as required by law, and shall carefully keep and preserve all books and papers and other property appertaining to his office and deliver the same to the proper authorities, then this obligation to be void."

It was a duty of Roy, as an official, to render true accounts for services. It was upon such accounts that he received his remuneration. He could not render a true account of his office and withhold moneys wrongfully paid him, and which belonged to the State.

The bond involved in Forest County v. Dawley et al., 149 Wis. 323, 136 N.W. 335, 336, was conditioned somewhat differently, but the facts are almost identical. In this case a county judge had rendered bills for more than he was entitled to receive and the suit was brought on his official bond to recover them. We copy from the opinion as follows:

"Appellant contends that the obligation of a surety is strictissimi juris, that nothing can be taken against him by construction, and that his liability cannot be extended beyond the very terms of the conditions of the bond. * * * Such indemnity bonds partake of the essential features of insurance contracts and should be construed most strongly against the party preparing and furnishing them. * * *

"But, even so construed, the liability of a surety upon an official bond must be held to be limited to acts done by the principal by virtue of his office or by reason of the fact that he held the office; that is, some breach of official duty must be shown in order to constitute a breach of the bond. * * * "Dawley was entitled to render bills against the county for extra services within the statute.

Such authority was conferred upon him by virtue of his office. The bills rendered as shown by Exhibit B were for such alleged extra services. In presenting bills against the county it became his duty as county judge to render just and true bills, to render bills for services actually performed and for such services only for which he was entitled to compensation. This he did not do. The demurrer admitted that he was not entitled to compensation for the services claimed. In presenting such illegal claims and receiving money on them he breached his official duty. It was within his authority to present claims against the county for services rendered within the provisions of the statute, and they were presented by virtue of his office—certainly by reason of his holding the office. * * *

"Since the condition of the bond is that the principal 'shall faithfully discharge the duties of the office,' a breach thereof occurred when such duties were not faithfully discharged. The breach of official duty and the breach of the bond went hand in hand."

Also see: Imperial County v. Adams, 117 Cal.App. 220, 3 P.(2d) 953; Lewis v. State, 65 Miss. 468, 4 So. 429; City of Greenville v. Anderson, 58 Ohio St. 463, 51 N.E. 41; Campbell v. People, 154 Ill. 595, 39 N.E. 578; U. S. Fidelity & Guaranty Co. v. Gully, 168 Miss. 740, 150 So. 828; Jones v. Com'rs, 57 Ohio St. 189, 48 N.E. 882, 63 Am.St.Rep. 710.

Appellant cites certain cases, in which, under similar facts, courts have held that

sureties are not liable upon the official bonds of their principals. These courts have in every instance based their decisions upon the view that the surety is not liable for a wrongful act committed which is merely by color of the office; that such contracts are strictly construed in favor of the surety. We quote sufficient from a number of these cases to show the basis of the decision: "Upon this condition of the bond, the sureties have a right to stand, and are entitled *to a strict construction thereof*. The illegal allowances to said justice of the peace by said county commissioners, for which recovery is asked in this action, did not come into the hands of said justice of the peace by virtue of his office, and the sureties on said bond are not liable therefor." Board of Com'rs **v.** Vaughn, 51 Okl. 609, 152 P. 115.

We quote from State to Use of Brooks, v. Fidelity & Deposit Co., 147 Md. 194, 127 A. 758, 759, as follows: "The surety's obligation, therefore, is coextensive with the duties of the sheriff's office, but does not extend beyond this single limitation on the scope of the bondsman's contractual liability. In the ascertainment of whether the wrong complained of is within the stipulations of the bond, the Maryland rule, which was adopted after careful consideration of the opposite view and of the authorities supporting it, is that, if the act is done by virtue of the authority of the office, the surety is liable, but, if the thing committed is merely by

color of his office, the surety is not responsible under the terms of the bond."

Also: "When he undertook that his principal should account for and pay over all moneys that should come to his hands as supervisor, the intendment is that such moneys as should, pursuant to law, be received by him in his official capacity, and in virtue of his office, were referred to, and not such as he might receive *by color of office, or because he was supervisor, but without right, and of* which some other official was the legal recipient and disbursing agent, having the right to receive them directly from the collector." San Luis Obispo County v. Farnum, 108 Cal. 562, 41 P. 445, 446.

The following cases are also cited by appellant, but those from which we have quoted are typical and in every instance the obligation is strictly construed in favor of the surety: City of San Jose v. Welch et al., 65 Cal. 358, 4 P. 207; Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198; City of Butte v. Bennetts et al., 51 Mont. 27, 149 P. 92, Ann.Cas.1918C, 1019; Maryland Casualty Co. v. Salmon, 45 Ga.App. 28, 163 S.E. 285; Hughes v. Board of County Com'rs, 50 Okl. 410, 150 P. 1029; McCrory v. Board of Commissioners, 48 Okl. 684, 150 P. 683; Stutsman v. State, 58 Okl. 113, 158 P. 1132; Shelton v. State, 62 Okl. 105, 162 P. 224.

██ Roy received the money, to recover which this action was brought, under color of his office; and his failure to account to the state therefor was a breach

of his official bond, for which appellant is liable.

The judgment of the district court is affirmed, and the cause remanded.

It is so ordered.

HUDSPETH, C. J., and ZINN, J., concur.

SADLER and BICKLEY, JJ., did not participate.