17 P.(2d) 358

**DIRECTORS OF INSANE ASYLUM OF NEW MEXICO v. BOYD et al.**

No. 3783.

Supreme Court of New Mexico.

Aug. 23, 1932.

Rehearing Denied Jan. 6, 1933.

H. M. Rodrick, of Raton, for appellants.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for appellee.

HUDSPETH, J.

This is an appeal from a judgment in the sum of $3,768, with interest thereon rendered by the district court of Colfax county in favor of appellee and against the appellants for the maintenance, care, and custody of Maggie Thomas Boyd, an insane person, in the New Mexico Insane Asylum, from October 12, 1918 to April 1, 1929.

Maggie Thomas Boyd was committed to the Insane Asylum as an indigent person by the district court of the Eighth judicial district on the petition of her father, John W. Thomas, May 12, 1916, and remained in said asylum until April 1, 1929. The father of the lunatic died testate in the latter part of the year 1916, and his will was admitted to probate in Colfax county, by which he devised to his daughter, Maggie Thomas Boyd, lot 3 in block 8, and lot 3 in block 18 in the town of Raton. It is stipulated: "That Maggie Thomas Boyd, from the time said will was admitted to probate in May 1917, was entitled to enough out of the estate of her said father to provide for her a 'fair and respectable living' while she remained insane and that, if and when she regains sanity, she will be entitled to certain real estate devised to her by her said father together with the net earnings thereof from the date of her father's death; and that, if she dies without regaining sanity, what remains of the property which would have gone to her had she regained sanity, will go to David J. Thomas and Willis O. Johns."

David J. Thomas and Willis O. John were appointed and qualified as executors of the will of John W. Thomas and as guardians of the property of Maggie Thomas Boyd in the year 1917. They continued in said offices until the year 1928, when appellant, John Leonard, was appointed to succeed David J. Thomas and Willis O. John as guardian of the property of Maggie Thomas Boyd. As a result of litigation between said guardian and David J. Thomas and Willis O. John, the said estate of John W. Thomas was distributed, and the real estate devised to Maggie Thomas Boyd and some $13,000 of accumulated income therefrom was delivered to the said Leonard, as receiver.

Appellants admit that the appellee intended to charge for the keep of the insane woman for the period covered by the claim sued upon, but deny that it had a right of action because the insane woman was admitted to the asylum as an indigent.

Section 130-312, 1929 Comp., is our statute on the procedure for inquisition of lunacy and the commitment of insane persons to the state asylum by a district judge. Among other provisions are the following: "And further, if said person is indigent, he shall so certify to the board of directors of the asylum, and shall order said person to be committed to said asylum, and such indigent insane person shall be admitted to said asylum upon the presentation of such certificate. * * * Provided, that in case any person so found to be insane is possessed of property of any sort that can be subjected to the payment of the

care and support of such insane person, then the court shall order all proper proceedings to be taken to subject such property to the payment of the care and support of said person. * * * "

The certificate of the judge, on which the insane woman was admitted as an indigent person, authorized the asylum officials to keep her at state expense, but such inquiry and finding by the judge that the insane woman was indigent at the time of her commitment has no bearing on the right of the appellee to collect for her keep after her father's will was admitted to probate; it being admitted that the appellee intended to charge, and did at the time charge, for the care and maintenance of Maggie Thomas Boyd for the period covered by the claim sued upon at the regular rate of $30 per month fixed for the keep of nonindigent insane patients at the state asylum. This rate was fixed under section 130-309, which authorized the directors of the asylum to "make regulations and fix the terms upon which insane patients who are not indigent or who are not residents of the state shall be permitted to enter or be cared for in said asylum." That it was the right and duty of the directors of the Insane Asylum of New Mexico to make such charge, after Maggie Thomas Boyd came into her inheritance, the net income from which was nearly three times the cost of her keep at the asylum, is apparent. The fact that David J. Thomas and Willis O. John, who received the income of the property devised to the insane woman, did not account for it currently as her guardi-

ans, makes no difference. It was in their hands and available for her maintenance, and it was their duty to provide their insane ward with a "fair and respectable living" under the common law as well as our statute (section 62-114, 1929 Comp.), a duty which they failed to discharge.

The appellee furnished the insane woman necessaries with intent to charge therefor, being authorized so to do under the statute with reference to nonindigent patients.

"An insane person is liable for the reasonable value of things furnished to him necessary for his support. * * * This was so at common law, where the necessaries were furnished by an individual; and we have never seen a case, and do not think any can be found, holding that this rule comes in conflict with any provision of the constitution of this or any other state of the Union. We see no reason why the same rule should not apply to a state hospital for the insane which does and furnishes for the insane person only those things required by the law of the state." In re Yturburru's Estate, 134 Cal. 567, 66 P. 729.

The weight of authority seems to be in accord with this opinion. McNairy County v. McCoin, 101 Tenn. 74, 45 S. W. 1070, 41 L. R. A. 862; Dandurand v. Kankakee County, 96 Ill. App. 464, affirmed 196 Ill. 537, 63 N. E. 1011; Palmer v. Hudson River State Hospital, 10 Kan. App. 98, 61 P. 506; Coleman v. Com'rs of Lunatic Asylum, 6 B. Mon. (Ky.) 239; Manders' Committee v. Eastern State Hospital, 84 S. W. 761, 27 Ky. Law Rep. 254;

Hopper v. Eastern Kentucky Lunatic Asylum, 85 S. W. 1187, 27 Ky. Law Rep. 649; In re Tye (1900) 1 Ch. (Eng.) 249, 69 L. J. Ch. 153, 81 L. T. N. S. 743, 48 W. R. 276; State Commission in Lunacy v. Eldridge, 7 Cal. App. 298, 94 P. 597, 600; Board of Chosen Freeholders v. Ritson, 68 N. J. Law, 666, 54 A. 839; Kaiser v. State, 80 Kan. 364, 102 P. 454, 24 L. R. A. (N. S.) 295; State v. Ikey's Estate, 84 Vt. 363, 79 A. 850, Ann. Cas. 1918A, 575.

■ Appellants maintain that their plea of the statute of limitations should have been sustained. The asylum is a state institution (section 1, art. 14, Const.), controlled by its officials and maintained at public expense. Its directors are appointed by the Governor of the state, and they have no personal interest in the institution's property. The loss of this claim would fall on all of the people of the state. Statutes of limitation ordinarily do not run against the state. State v. Board of County Commissioners, 33 N. M. 340, 267 P. 72. The appellee being an agency of the state,

operating an asylum for the insane—a governmental function—the statutes of limitation do not apply. Central Hospital for Insane v. Adams, 134 Tenn. 429, 183 S. W. 1032, L. R. A. 1916E, page 94; State v. Moore, 90 Kan. 751, 136 P. 233, 236; Eastern State Hospital v. Graves' Committee, 105 Va. 151, 52 S. E. 837, 3 L. R. A. (N. S.) 746, 8 Ann. Cas. 701; Wood on Limitations (4th Ed.) vol. 1, p. 170. 37 C. J. p. 715, states the rule: "According to the weight of authority the statute of limitations cannot be pleaded against an action by a state hospital for the insane, a body politic and corporate created by the state to carry out a public charity, and supported by the public revenues and controlled by the state's officers, to recover for board and medical attention furnished to an inmate."

Finding no reversible error in the record, and the judgment being clearly right under the facts in evidence, the judgment will be affirmed. It is so ordered.

BICKLEY, C. J., and WATSON and SADLER, JJ., concur.