STATE OF MONTANA, Plaintiff and Appellant *v.* WILLIAM K. BYRNE, Guardian of ESTATE OF MINNIE F. BEATON, An Incompetent Person, Defendant and Respondent.

No. 9962.
Submitted January 12, 1960. Decided March 11, 1960.
Rehearing denied April 6, 1960.
350 Pac. (2d) 380.

Forrest H. Anderson, Atty. Gen., John L. McKeon, Sp. Asst. Atty. Gen., for appellant. John L. McKeon, Sp. Asst. Atty. Gen., argued orally.

Harold F. Smith, Kalispell, argued orally for respondent.

THE HONORABLE JAMES T. SHEA, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, delivered the Opinion of the Court.

This is an appeal by plaintiff from a judgment in the sum of $1,909 rendered by the district court of the county of Flathead, in its favor for the care, support and maintenance of Minnie F. Beaton, an insane person, in the State Hospital at Warm Springs, Montana, from September 11, 1950, up to December 2, 1955. Plaintiff had sought recovery from May 7, 1934, when Minnie F. Beaton was committed to the Hospital by a judge of the district court as an indigent person and was received therein on that day. She has been there confined continuously from the date she was committed up to the present time, admittedly a hopelessly incurable insane person. The order of commitment stated the expenses for the care and maintenance of said insane person were a proper charge against the State of Montana.

On September 11, 1950, the defendant, William K. Byrne, was appointed guardian of the estate of Minnie F. Beaton, and on that day she came into possession of an estate or inheritance of the approximate value of $6,500, the control of which is in the guardian.

At the time Minnie F. Beaton was so committed it was the law, briefly stated, that whenever a hearing for examination or committal was had before the judge, and a person was adjudged to be insane and ordered confined in the insane asylum, it was the duty of the judge to take evidence as to the financial worth of the insane person and if it appeared to the court the insane person had means, money or property out of which the expenses of his or her maintenance could be paid, it became the duty of the court to make an order to that effect, stating how much of the insane person's property should be applied, the amount to be fixed with due regard to the proper preservation of the estate of said insane person. R.C.M.1921, § 1444. This statute continued in effect in the 1935 Codes and also

through an amendment thereto by Chapter 117, Laws of 1939. Indeed, it was not until the enactment of Chapter 76, Laws of 1943, the statute was so amended that no matter what sum the court arrived at as to the amount of the incompetent's estate which should be applied toward his maintenance in the state hospital, it should not in any event exceed $1.00 per day. R.C.M. 1947, § 38-214. The rate now charged has been greatly increased by a further amendment to the statute Chapter 49, Laws of 1955.

No person has ever paid the hospital or the State of Montana any money for the care, support or maintenance of Minnie F. Beaton.

The State of Montana commenced an action against the guardian of the estate of Mrs. Beaton, and sought to recover judgment for her care, support and maintenance from May 7, 1934, to December 2, 1955, the ''date the complaint was filed''. Actually, the complaint was filed on December 5, 1955. By its complaint, and by reason of the wording of section 1444, R.C.M. 1921, supra, plaintiff alleged the sum of $1.00 per day was a reasonable charge to be made for the cost of the care, support and maintenance of Minnie F. Beaton for each and every day she was confined in the hospital.

Because the order of commitment declared Minnie F. Beaton to be an indigent person and ordered confined at state expense, the defendant, in his answer, alleged that no liability was imposed by law upon him to pay for her care and maintenance. It was defendant's theory the court that made the commitment to, and the state hospital, which received the patient, were arms and agencies of the state, ergo, the state was bound by the commitment and it alone was responsible for the care and maintenance of the insane patient. With this theory we do not agree. The order of commitment was in no way res judicata of this proceeding for the state was not a party to the insanity hearing. In re McDonalds' Estates, 10 Wash.2d

692, 118 P.2d 165; Kaiser v. State, 80 Kan. 364, 102 P. 454, 24 L.R.A.,N.S., 295.

The cause was submitted to the court below upon an agreed statement of facts and upon the complaint and answer. Therein, among other things, it was agreed the sum of $1.00 per day was the reasonable value of the cost of care, support and maintenance of the indigent insane person, and that all of the allegations contained in plaintiff's complaint were true. Thereafter defendant filed a motion to amend his answer, and with it filed a proposed amended answer and therein interposed an affirmative defense, pleading what he alleged to be the pertinent statutes of limitation (sections 93-2607 and 93-2615, R.C.M. 1947), as a bar to plaintiff's right of recovery. The limitations, if available to defendant, would have precluded plaintiff from recovering for the care, support and maintenance of the insane patient for any period of time in excess of two years immediately preceding the date when plaintiff's complaint was filed. The motion to amend was denied. The court then made and adopted certain findings of fact and conclusions of law. The pertinent parts thereof were to the effect the insane patient was continuously confined in the state hospital from May 7, 1934, up to the date the complaint was filed, December 2, 1955, or for a total of 7,879 days; that $1.00 per day was a reasonable charge to be made for the care and maintenance of the insane patient at all of said times; that on September 11, 1950, the insane patient inherited from the estate of her deceased husband the sum of $6,500; that because the patient had no funds or estate prior to September 11, 1950, the state was precluded from recovering the expenses of care and maintenance from May 7, 1934, to September 11, 1950; that the statute of limitations was applicable, but the defendant failed to plead the same; that therefore the state was entitled to judgment and decree for $1,909, being for the period of time from September 11, 1950, to December 2, 1955, a total of 1,909 days at

$1.00 per day and judgment and decree were made and entered in accordance therewith.

Plaintiff's specifications of error were: (1) The court erred in finding the insane patient was not chargeable for her care and maintenance from May 7, 1934, up to September 11, 1950, and (2) the court erred in entering final judgment that the insane patient was not chargeable for her care and maintenance between said two mentioned dates.

Defendant interposed two cross-assignments of error: (1) The court erred in denying defendant's motion to file an amended answer which would have included a defense of the statute of limitations, and (2) the court erred in ruling the state was not bound by the statute of limitations because defendant failed to plead the same in bar of the claim, and in giving judgment to the state from the date of the insane person's inheritance instead of only two years prior to the filing of the complaint.

In its exceptions to the court's conclusions of law, plaintiff contended the statute of limitations was not applicable to the sovereign State of Montana or any of its agencies.

As to defendant's cross-assignments of error, we recognize a refusal to permit an amendment which is proposed at an opportune time and should be made in the furtherance of justice is an abuse of discretion on the part of the trial court. It is the rule to allow, and the exception to deny, the right to amend. State ex rel. Gold Creek Mining Co. v. District Court, 99 Mont. 33, 43 P.2d 249, and cases there cited. However, if error was committed, it was not prejudicial in view of the ultimate disposition of this appeal as hereinafter made to appear. So too, plaintiff's contention, the statutes of limitation do not apply to it as a sovereign state according to the maxim *Nullum tempus occurit regi,* need not here be passed upon for the same reason. That question is specifically reserved.

The remaining questions to be resolved are:

Can the estate of a person committed to the state hos-

pital as an insane indigent patient at state expense be held liable for the expenses of care, support and maintenance furnished such patient prior to the time, and also after the time, the patient acquires an estate?

Should the defendant be estopped from asserting in this case that the state should be limited in its recovery for a period of two years only preceding the filing of its complaint under the alleged pertinent statutes of limitation?

It is our view of this case these two questions should be answered in the affirmative.

While there are cases from other jurisdictions holding to the contrary, it is our view the state is entitled to reimbursement for expenses incurred for the care, support and maintenance of a patient confined in the state hospital, even though any such patient be committed as an indigent person, and that liability therefor extends to property acquired subsequently to the time the expenses were incurred. In re Yturburru's Estate, 134 Cal. 567, 66 P. 729; Allen v. Department of Mental Hygiene, 112 Cal. App.2d 732, 247 P.2d 409; Directors of Insane Asylum of New Mexico v. Boyd, 37 N.M. 36, 17 P.2d 358; Kaiser v. State, supra; In re McDonalds' Estates, supra, and the cases cited in said opinions. Further, the instant case is one based upon a mutual, open and current account. This is evident from the pleadings and the agreed statement of facts. The action, therefore, is on the entire account covering the expenses for the care, support and maintenance of the insane patient from the date of the commitment to the date the complaint was filed. It was a continuous account. It follows that the action may include items for days covering such care, support and maintenance, entered more than the statutory period referred to by defendant as being prior to the day the complaint was filed. Rosati v. Heimann, 126 Cal.App.2d 51, 271 P.2d 953; Gardner v. Rutherford, 57 Cal.App.2d 874, 136 P.2d 48. In other words, if some statute of limitations in this state were applicable to the facts in this case, then such statute would commence to

run on the day the last item for care, support and maintenance was furnished. In this case that would be December 2, 1955. See R.C.M. 1947, § 93-2614; 54 C.J.S., Limitation of Actions, § 164, and notes, also R.C.M. 1947, § 93-2615.

Had the provisions of section 93-2604, subdivision 1, R.C.M. 1947, the pertinent and applicable statute, in this kind of case, been pleaded in bar to plaintiff's cause of action, it would not have aided the defendant for, because of the facts, and for the reasons, hereinbefore related, plaintiff would have had five years from and after December 2, 1955, in which to commence the action.

The judgment is reversed and the case remanded to the district court of Flathead County, with directions to enter judgment for the plaintiff and against the defendant in his capacity as such guardian, to pay the expenses for the care, support and maintenance of the said incompetent person at the rate of $1.00 per day for each and every day from May 7, 1934, to December 2, 1955, a total of $7,879.

It is so ordered.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, ANGSTMAN and CASTLES concur.