458 P.2d 795

The BOARD OF EDUCATION, SCHOOL DISTRICT 16, ARTESIA, EDDY COUNTY, New Mexico, Plaintiff-Appellee,

v.

Frank M. STANDHARDT and the Flintkote Company, a corporation, Defendants-Appellants,

v.

HAMILTON ROOFING COMPANY, a Copartnership, Defendant-Appellee.

No. 8699.

Supreme Court of New Mexico.

Sept. 15, 1969.

William J. Heck, Hobbs, for Flintkote Company.

Atwood, Malone, Mann & Cooter, Robert A. Johnson, Roswell, for Frank M. Standhardt.

McCormick, Lusk, Paine & Feezer, Jay W. Forbes, Carlsbad, William M. Siegenthaler, Artesia, for plaintiff-appellee.

Frazier, Cusack & Schnedar, Roswell, for defendant-appellee.

## OPINION

WATSON, Justice.

On June 18, 1958 the Board of Education of School District No. 16, Artesia, Eddy County, New Mexico, employed Frank M. Standhardt as the architect to prepare plans and specifications and to supervise the construction of the Abo Elementary School which was to have the necessary protective characteristics against "nuclear fallout." After a modification of the plans, the roof was constructed from twelve (12) separate slabs of concrete which had (man-made) cracks along the sides where the separate pours abutted one another. The waterproofing compound made by The Flintkote Co. failed to stop the leaks from precipitation in these joints. Leakage was discovered on or about April 24, 1962, on which date the building was accepted by the Board subject to correction of this defect. The defect not having been corrected, the Board originally brought suit against W. R. Bauske, the contractor, and the U. S. Fidelity and Guaranty Company, his surety, on July 3, 1963.

On November 1, 1963 an amended complaint was filed joining Hamilton Roofing Company, the applier of the waterproofing compound, Standhardt, and Flintkote. On January 21, 1966 orders based upon voluntary dismissals of the action were filed by the plaintiff dismissing Flintkote and Hamilton. On April 14, 1966, the court granted Standhardt's motion to file a third party complaint against Flintkote and Hamilton and the same was filed on the same date. Thereafter, and on July 17, 1967, a third amended complaint was filed

by the Board against all of the defendants including Flintkote and Hamilton, and on September 8, 1967 Standhardt filed an answer to this third amended complaint and a cross-claim against Flintkote and Hamilton.

Trial was had without a jury on the pleadings thus finalized which resulted in a dismissal of plaintiff's action against Bauske, the surety company, and Hamilton. Judgment in the amount of $34,600 with interest at six per cent from April 24, 1962 was awarded the plaintiff against Standhardt and Flintkote jointly and severally, and Standhardt's cross-claim against Hamilton and Flintkote was dismissed. The dismissal of the cross-claim against Flintkote, however, was without prejudice and in Conclusion of Law No. 23 the court stated:

"The court does not intend, however, to pass upon any rights of either Standhardt or Flintkote under the New Mexico Uniform Contribution Among Tortfeasors Act."

Standhardt and Flintkote have appealed from this judgment.

■ Standhardt claims error under five points, the first of which is that the court's Finding No. 16 does not support the court's Conclusions of Law Nos. 4, 5, and 6. Finding No. 16, to which Standhardt does not object, reads:

"16. Defendant Standhardt failed to specify a ten-year guaranteed roof over the slab area (being the main structure of the Abo School and covering approximately 28,800 square feet) and did not advise the plaintiff of this fact, and plaintiff had no knowledge of the lack of this provision until November of 1966; that defendant Standhardt deliberately omitted to provide for a roof guarantee over this area, it being his position this area was not a 'roof,' and that the one-foot hydrostatic head specification apparently sufficiently protected plaintiff."

The court's Conclusion of Law No. 4 (set forth hereafter) does not specifically refer to the failure to specify, or the omission to advise, about the ten-year guaranteed roof. By Conclusion of Law No. 5, however, Standhardt's failure to provide for a ten-year guaranteed roof in the plans and specifications was deemed negligence, and a basis for judgment, and Conclusion No. 6 held that Standhardt's failure to advise the Board of this omission in the plans was a breach of his duty and a basis for judgment.

It is appellant Standhardt's contention that since the failure in the waterproofing was discovered prior to the acceptance of the school building and even before the one-year warranty period provided for in the contract documents began to run, there could be no proximate cause between these acts of negligence and plaintiff's loss.

Appellant Standhardt was not prejudiced by Conclusions of Law Nos. 5 and 6 as the judgment was fully supported by the findings of the court to the effect that the plans and design for waterproofing of the roof were defective. To remand this cause to the district court for it to retry and reconsider the matter of the ten-year guarantee would be an empty ceremony; the results would be the same. State v. Stapleton, 48 N.M. 463, 152 P.2d 877 (1944) and Southern California Petroleum Corporation v. Royal Indemnity Co., 70 N.M. 24, 369 P.2d 407 (1962). If the final judgment herein is correct, this error claimed by appellant Standhardt is harmless. Evans v. Evans, 44 N.M. 223, 101 P.2d 179 (1940). Douglass v. Mutual Ben. Health and Accident Ass'n., 42 N.M. 190, 76 P.2d 453, 467 (1937).

■ Appellant Standhardt under its Point II claims error in that the court predicated liability against him, the architect, in part at least because of his failure to properly supervise the construction. The court's Conclusion of Law No. 4 reads as follows:

"4. As evidenced by competent testimony from expert witnesses, defendant Standhardt did not fulfill his contract with plaintiff in that he failed to use the ordinary skill and care usually exercised by architects in New Mexico in the prep-

aration of the plans, specifications and working drawings, and in the supervision of the construction of the Abo School; the plans, specifications and drawings were faulty in design and insufficient for the purpose intended, and the supervision was insufficient and neglected, insofar as the slab roof and general waterproofing over the main structure was concerned, since the same is not impervious to the elements and acts of nature and has leaked precipitation since its completion and still continues to do so; and, by reason thereof, plaintiff should have judgment against the defendant Standhardt."

Appellant Standhardt contends that since the court found that defendant Hamilton, the applier of the waterproofing material, and defendant Bauske, the general contractor, strictly complied with the plans and specifications and were not negligent, how could his failure to supervise the construction be material and be the proximate cause of plaintiff's loss.

We do not believe that that portion of Conclusion No. 4 above quoted relating to supervision is necessarily inconsistent with the findings of satisfactory compliance on the part of the contractor and the waterproofing applier. Had Standhardt exercised proper supervision he might well have detected faults or deficiencies in his own plans or specifications and thus would have been in a position to remedy them before it was too late. Conclusion No. 4, insofar as it may contain an ultimate finding, is supported by substantial evidence and can thus be reconciled consistently with the other findings. It is our duty to indulge every presumption in favor of the correctness of the judgment. Heine v. Reynolds, 69 N.M. 398, 367 P.2d 708 (1962); cf. Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967). We will not undertake to search the mind of the trial court to determine exactly his approximation of how the failure to supervise contributed to the loss. Consolidated Placers, Inc. v. Grant, 48 N.M. 340, 151 P.2d 48 (1944).

By his Point III Standhardt claims the court erred in dismissing his cross-claim against Flintkote, because he is entitled to indemnity from Flintkote under the facts found. No reason was specified by the lower court for the dismissal of the cross-claim. It was dismissed without prejudice, however, and we can only assume, therefore, that the court did not rule on the merits of Standhardt's claim of indemnity.

The trial court may have concluded that Standhardt's third-party complaint against Flintkote was premature because Standhardt had made no payment on the judgment. See 42 C.J.S. Indemnity § 25 (1944). Such might well be a condition to the judgment, but would not be grounds for a dismissal of a cross-claim or a third-party complaint for the recovery of either indemnity or contribution. We believe Rules 13(g) and 14 (§ 21–1–1(13) (g) and (14), N.M.S.A. 1953 Comp.) permit the determination of such claims although a money judgment for indemnity must be subject to cross-claimant's actual loss, and a money judgment for contribution would be subject to the conditions of § 24–1–12 (2), N.M.S.A. 1953 Comp. 3 Moore's Fed. Practice § 13.34 and § 14.08 through 14.10; Marcus v. Marcoux, 41 F.R.D. 332 (D.R.I. 1967); Jackson & Church Div., York-Shipley, Inc. v. Miller, 414 S.W.2d 893 (Ky.1967); Lommori v. Milner Hotels, 63 N.M. 342, 319 P.2d 949 (1957). Compare Rio Grande Gas Co. v. Stahmann Farms, Inc., (decided July 28, 1969) 80 N.M. 432, 457 P.2d 364, where we held dismissal was proper because a settlement had been made by the complaining joint tortfeasor without extinguishment of the obligation of the other joint tortfeasor as required by § 24–1–12(3), N.M.S.A. 1953 Comp.

Under Points V and IV appellant Standhardt asserts error in the amount of the judgment and in the allowance of interest on the judgment.

Appellant Standhardt challenges the court's Finding No. 40 which held that the reasonable value of labor and materials to correct the defective roof and water-

proofing was $34,600. This figure was submitted by a written bid from John D. Carr, a licensed general contractor of 19 years experience. Reasonable estimates made by defendant Bauske, Mr. O'Neal, an engineer, and Standhardt were considerably less. Mr. Carr did not testify that his price of $34,600 for doing the work was a reasonable price under the circumstances. "No doubt he would have been willing to do it at an even higher figure," appellant tells us.

■ We note, however, that Mr. Carr was the only one who submitted a written bid after examining the building, and was the only one to explain how he arrived at his bid. We cannot say that the court could not indulge in the inference that his bid was reasonable under the circumstances or that the finding was not supported by substantial evidence. Nash v. Higgins, 75 N.M. 206, 402 P.2d 945 (1965); and see Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968).

■ We believe that the trial court's allowance of interest must be presumed to be correct. Standhardt's answer was in the affirmative when asked if cost of repairs could be ascertained with reasonable certainty on April 24, 1962. State Trust & Savings Bank v. Hermosa Land and Cattle Co., 30 N.M. 566, 240 P. 469 (1925); Montgomery v. Cook, 76 N.M. 199, 413 P.2d 477 (1966); Gibbins, Inc. v. Utah Home Fire, 202 F.2d 469 (10th Cir. 1953).

No reversible error having been shown by appellant Standhardt, the judgment against him is affirmed.

\*    \*    \*    \*    \*    \*

Appellant, The Flintkote Co., attacks the judgment under seven points in its brief. Its Point I reads as follows:

"THE BOARD'S CLAIM AGAINST FLINTKOTE, WHETHER BASED UPON BREACH OF IMPLIED WARRANTY OR PRODUCT LIABILITY, WAS BARRED BY THE FOUR YEAR STATUTE OF LIMITATIONS."

Flintkote claims that plaintiff's cause of action arose against it when the damage was discovered by the plaintiff on April 24, 1962. The suit filed against it on November 1, 1963 was dismissed, however, on January 21, 1966; and no amended complaint was again filed against it by the plaintiff until July 17, 1967—over five years after the discovery of the injury. The fact that Standhardt joined Flintkote as a third party defendant in the action on April 14, 1966 did not toll the statute for the plaintiff according to Flintkote.

Appellee Board's sole argument in upholding the court's denial of the statute of limitation is that, as a political subdivision of the State, limitations do not run against it.

The statute relied upon is § 23-1-4, N.M. S.A. 1953, which reads as follows:

"Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four (4) years."

This statute was § 4 of Ch. V of Laws of 1880 and has never been amended. Section 19 of Ch. V of the Laws of 1880, now appearing as § 23-1-19, N.M.S.A. 1953, reads as follows:

"The above limitations and provisions shall not apply to evidences of debt intended to circulate as money; but shall, in other respects, be applicable in all other actions brought by or against all bodies corporate or politic, except when otherwise expressly declared."

Appellee Board points out that in McWhorter v. Board of Education of Tatum Independent School District No. 28, Lea County, 63 N.M. 421, 424, 320 P.2d 1025 (1958), we said "[w]e feel the school district is a political subdivision of the state created to aid in the administration of education and subject, *in this case*, to the immunities available to the state itself." (Emphasis ours). That case involved the school district's immunity from suit and the authority cited was the California case of Ridge v. Boulder Creek Union Junior-

Senior High School District of Santa Cruz County, 60 Cal.App.2d 453, 140 P.2d 990, 995 (1943). Appellee points out that the state's immunity from suit has been upheld in Livingston v. Board of Regents of New Mexico College of A. & M., 64 N.M. 306, 328 P.2d 78 (1958), and in City of Albuquerque v. Campbell, 68 N.M. 75, 358 P.2d 698 (1961), and in the many earlier cases cited therein, and that in In re Bogert's Will, 64 N.M. 438, 329 P.2d 1023 (1958), we held that the non-claim statute, § 31–8–3, N.M.S.A. 1953, could not be pled against the directors of the State Insane Asylum, citing Directors of the Insane Asylum of New Mexico v. Boyd, 37 N.M. 36, 17 P.2d 358 (1933).

■ We are convinced that the statute of limitations does not run against the state and is not made applicable to the state itself by the wording of § 23–1–19, N.M.S.A. 1953, which makes the limitations applicable only to actions brought by "all bodies corporate or politic." State v. Roy, 41 N.M. 308, 68 P.2d 162 (1937); Hagerman v. Territory, 11 N.M. 156, 66 P. 526 (1901).

In the Roy case, supra, we quoted from Wood on Limitations (4th Ed.) § 52 at page 160 as follows:

"But this rule only applies to claims in which the State is the real party, and has no application in cases where, although a nominal party to the record, it has no real interest in the litigation, but its name is used to enforce a right which enures solely to the benefit of an individual or corporation, municipal or otherwise."

Appellant Board cites 53 C.J.S. Limitations of Actions § 17, for the general rule that when not otherwise provided by the Constitution or statute, statutes of limitations run against municipalities, counties and other political subdivisions of the state to enforce mere private corporate or proprietary rights, but that when the rights enforced by these political subdivisions are in respect to public funds or the exercise of governmental functions they then relate to and concern the state and all the people

thereof and such subdivisions then, as an arm of the state, become immune to the statute of limitations.

■ It appears, therefore, to be the general rule that statutes of limitations do not run against the state unless the statute expressly includes the state or does so by clear implications, but will run against county and other political subdivisions, including school districts, unless such may be deemed to be an arm of the state because of the particular governmental functions or purposes involved. Altman v. Kilburn, 45 N.M. 453, 116 P.2d 812, 136 A.L.R. 554 (1941); (As to school districts, see 34 Am. Jur., Limitations of Actions, § 298, and the Annot. in 98 A.L.R. 1221). Here, however, we have the situation where our statute makes the statute of limitations "applicable in all other actions brought by or against all bodies corporate or politic except when otherwise expressly declared."

As stated above, this statute, including § 23–1–19, N.M.S.A. 1953, was adopted by the Territorial Legislature in 1880, perhaps from Iowa. The wording of the Iowa statute was identical with ours (Atty.Gen. Op.No.3899, July 2, 1926). The Iowa statute had been construed by the courts of that state prior to 1880.

In County of Des Moines v. Harker, 34 Iowa 84 (1871), an action was brought by the County of Des Moines for the School Fund Commissioner to recover upon a note. Section 3750 of the Rev.Stat. Iowa, 1869, was pled. That section is identical with our present § 23–1–19, N.M.S.A. 1953, making the statute of limitations applicable to bodies corporate and politic. In State v. Henderson, 40 Iowa 242 (1875), the situation was reversed from that in Des Moines County v. Harker, supra.

In 1876, another Iowa case, Brown and Sully v. Painter, 44 Iowa 368, held that the statute of limitations ran against the county and its effort to recover taxes was barred. There the court said:

"It has never been determined that the statute of limitations does not run against a county. Indeed, the very opposite of

that has been settled by adjudications of this court. In County of Des Moines v. Harker, it was held that the statute of limitations did not run because the suit, although in the name of the county, was in effect an action by the State. In State v. Henderson, 40 Iowa 242, it was held that the statute of limitations did run, notwithstanding the action was in the name of the State, because it was in the interest of, and for the ultimate benefit of the county."

It appears, therefore, that prior to the adoption of the New Mexico statute the same words had been construed in Iowa as permitting the statutes of limitations to run against counties but not against the state.

Appellee Board points out that in Hagerman v. Territory of New Mexico, supra, the Territorial Supreme Court held that in an action brought by the district attorney in the name of the territory but to recover delinquent taxes due Eddy County, the plea of the statute of limitations was not allowed; and the territorial court held that the county was a subdivision of the territory and that unless the statute expressly so provided the statutes of limitations would not run against it as it was performing a public function in collecting the taxes. A review of this case indicates that the Territorial Supreme Court cited the Iowa case of Des Moines County v. Harker, supra. We quote from Hagerman v. Territory as follows:

"Under our system of government a county is a civil subdivision of the Territory, and exists as a municipal corporation merely for the purpose of carrying on the territorial government; and it is well settled that the plea of the statute of limitations is no defense to those actions by such corporation involving public rights, such as taxation, *unless the statute expressly so provides*. [Citing cases.] And, as we have already observed, our statute contains no such provision. Section 2916, C.L. of N.M., 1897." (Emphasis added.)

Section 2916 of the Compiled Laws of New Mexico, 1897, referred to in the quote above from the Hagerman case, is the present § 23-1-4, N.M.S.A. 1953, setting forth the four year limitation. Certainly it contains no provision allowing the statute of limitations as a defense against municipal corporations or any other body. The section of the statute so providing was then § 2932 of the Compiled Laws of 1897, which is the present § 23-1-19, N.M.S.A. 1953. We can only conclude that the territorial court overlooked this section.

From the above, it appears that the present rule in New Mexico is that the general statutes of limitations (as originally set out in Ch. V of the Session Laws of 1880 and now appearing as § 23-1-1 through § 23-1-19, N.M.S.A. 1953), with few amendments are applicable in all actions brought by or against bodies corporate or politic except when otherwise expressly declared. Should it appear, however, that the action, although brought in the name of such body corporate or politic, is in reality for the state which is the real party in interest and that the nominal plaintiff has no real interest in the litigation, then, of course, the statute of limitations cannot be pled against the sovereign. On the other hand, if the suit is brought in the name of the state, but it is only the nominal party of record and its name is used to enforce a right which enures solely to the benefit of the body corporate or politic, then the statute of limitations can be pled as a bar to the action. State v. Roy, supra.

Since our statute (§ 23-1-19, supra) expressly provides that the limitations will run against all bodies corporate or politic we need not determine whether such bodies were exercising governmental functions or concerned with public rights in bringing the action; our only concern is whether the plaintiff is the real party in interest in the action.

Is a school district, as governed by a board of education, a body corporate or politic?

Other jurisdictions have held that if a school district or board of education has the power or duty to contract, lease, issue bonds, sue and be sued, and hold both real and personal property then it is a body corporate and politic. Bd. of Education of City of Chicago v. Upham, 357 Ill. 263, 191 N.E. 876, 94 A.L.R. 813 (1934); Patrick v. Maybank, 198 S.C. 262, 17 S.E.2d 530 (1941); Commonwealth v. School Dist. of Pittsburgh, 343 Pa. 394, 23 A.2d 496 (1942); Carter v. Lake City Baseball Club, 218 S.C. 255, 62 S.E.2d 470 (1950).

The local school district here is administered by the county or municipal board of education as provided for in §§ 73–9–1 and 73–10–2, N.M.S.A. 1953 (Repealed by Ch. 16, § 301, N.M.S.L. 1967). These sections grant the board of education "the power to sue and be sued, contract and acquire and dispose of school property." These characteristics of a body corporate and politic enumerated by the other jurisdictions are the same as those set forth in the above mentioned sections of the New Mexico statutes.

The obligation here sued upon is one owed solely to the district as administered by appellee Board; it is the real party in interest. McAtee v. Gutierrez, 48 N.M. 100, 146 P.2d 315 (1944). The statute of limitations, as pled, has run against it.

Having resolved its Point I in favor of appellant Flintkote, we need not consider the other points presented by it.

The cause is affirmed insofar as the judgment in favor of plaintiff-appellee and Hamilton Roofing Company, appellee, is concerned; and reversed and remanded as to the judgment in favor of plaintiff-appellee and against appellant, The Flintkote Company, and as to the order of dismissal of the cross-claim of appellant Standhardt against The Flintkote Company. The court is directed to set aside the judgment in favor of plaintiff-appellee against appellant, The Flintkote Company, and instructed to set the same aside and enter judgment for appellant, The Flintkote Company. The court is further instructed to set aside its dismissal of appellant Standhardt's third-party cause against appellant, The Flintkote Company, to reinstate it, and grant the parties a trial of the issues made thereon. Costs shall be assessed one-third against plaintiff-appellee, one-third against appellant, Standhardt, and one-third against appellant, The Flintkote Company.

It is so ordered.

NOBLE, C. J., and MOISE, J., concur.