In re Leo **VALDEZ** and Mabel **Valdez, Debtors.**

**NEW MEXICO DEPARTMENT OF LABOR, Plaintiff,**

v.

**Mabel VALDEZ, Defendant.**

**Bankruptcy No. 7–91–02218 R A.**
**Adv. No. 91–1239 R.**

United States Bankruptcy Court, D. New Mexico.

Feb. 18, 1992.

Pete McDevitt, Albuquerque, N.M., for debtor.

Douglas McKinnon, Albuquerque, N.M., for plaintiff.

## MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

This adversary proceeding was brought by the Employment Security Division of the New Mexico Department of Labor (ESD) against the debtor, Mabel Valdez, to determine the dischargeability of debt. The ESD alleges that the debtor wrongfully collected $968.00 of unemployment compensation benefits while employed by failing to disclose her employment. Pursuant to 11 U.S.C. § 523(a)(2)(A) the ESD asserts its claim of $968.00 should be declared nondischargeable because it was obtained by the debtor's false representation.[1]

This matter is before this Court on a motion to dismiss. The relevant facts as alleged in the complaint and attached exhibits arose over ten years ago. During an eleven week period between November 1979 and January 1980, the debtor collected $968.00 of unemployment compensation benefits by reporting that she was not working. In fact, the debtor was working at St. Vincent's Hospital in Santa Fe. After an administrative hearing the ESD officer determined that Ms. Valdez had "obtained benefits not legally due by knowingly failing to disclose material facts." Ex-

---

1. Section 523(a)(2)(A) excepts from discharge those debts:

　(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.... 11 U.S.C. § 523(a)(2)(A) (Supp. 1991).

hibit H–1 (Decision of the ESD Referee). Ms. Valdez was ordered by the ESD to repay the $968.00 and barred from receiving unemployment benefits for one year. Exhibit H–2. On February 9, 1981, Ms. Valdez executed an Acknowledgement of Debt and Restitution Schedule. Exhibit I.

Ten years later, on June 20, 1991, Ms. Valdez filed a Chapter 7 Bankruptcy petition. The ESD was not scheduled as a creditor. The ESD has dusted off this seemingly stale claim and seeks to collect the $968.00. The debtor contends that the ESD's complaint is barred by the statute of limitations. There is no provision in the New Mexico Chapter on Limitations of Actions, N.M.Stat.Ann. §§ 37–1–1—to—29 (Repl.Pamp.1990), which allows claims to live for ten years, but for claims by adverse possession. N.M.Stat.Ann. § 37–1–22 (Repl.Pamp.1990). Nonetheless, the ESD seeks to resuscitate its claim, arguing that the statute of limitations does not run against the state or its entities. The Court agrees with the ESD and concludes that no state statute of limitation has run against this claim.

■ Whether a creditor's claim is valid is determined by state law. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991). Therefore, whether the ESD's claim has expired is determined by New Mexico law. The refined issues before this Court are twofold: 1) whether any New Mexico statute of limitations runs against the ESD, and if not, 2) whether a state or federal labor statute contains a provision limiting the time in which the ESD can assess or collect its claim.

The statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c). The key, however, is who can use it, and against whom. It is important to remember that the Court is not addressing whether the sovereign is immune from suit or how statutes of limitation apply in such cases; this is an action *by* the state, not *against* the state. The Court is concerned with whether the "sovereignty" of the state can preserve its claim. *Compare Directors of Insane Asylum v. Boyd,* 37 N.M. 36, 17 P.2d 358 (1932) (action by the state) *with Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1976) (action against the state).

At common law the rule was that "the statute of limitations may be pleaded for the *benefit of the sovereign.*" 51 Am.Jur. 2d. *Limitations of Actions* § 397 (1970) (emphasis added). The immunity of the sovereign was considered "unilateral" and did not "create a converse right in an individual dealing with the government. . . ." *Id.* The public policy for this rule is that the sovereign is charged with enforcing public rights and protecting public property, and citizens of the state should not be harmed by the lack of diligence of public officers. *Id. see also, Boyd,* 37 N.M. at 39, 17 P.2d at 359 (1932) (loss of the state's claim should not fall on all the people of the state). Therefore, the sovereign could use the statute of limitations but was not subject to it.

On a state level the general common law rule may be modified by statute or by case law. Case law distinctions focus on, for example, the difference between private and proprietary rights as opposed to public or governmental rights. 51 Am.Jur.2d *supra* at § 416, *see also,* I Corman, **Limitation of Actions,** § 2.5.2 (1991). In such cases, if the state is performing a "governmental function" by protecting a public or governmental right statutes of limitation do not apply.

■ New Mexico follows the common law principle and has held that "[s]tatutes of limitation ordinarily do not run against the state." *Boyd,* 37 N.M. at 39, 17 P.2d at 359; *Ross v. Daniel,* 53 N.M. 70, 75, 201 P.2d 993, 998 (1949) ("statute of limitations does not apply to the state when suing in its sovereign capacity.") Further, early New Mexico cases are grounded in the rationale that statutes of limitation should not apply where the state is performing a "governmental function." *See e.g., Boyd,* 37 N.M. at 39, 17 P.2d at 359 (insane asylum was a public charity supported by public revenues, statute of limitations did not apply to directors suing on behalf of the state); *Hagerman v. Territory,* 11 N.M. 156, 161, 66 P. 526 (1901) ("public rights,

such as taxation" not subject to statute of limitations).

The above, however, is only part of the analysis. New Mexico also allows statutory modification of the common law principle. Therefore, the sovereign is immune from statutes of limitation unless a statute "expressly" or by "clearest implication" permits the defense to be raised against the state. *Board of Education v. Standhardt*, 80 N.M. 543, 549, 458 P.2d 795, 801 (1969) (citing *Hagerman v. Territory*, 11 N.M. 156, 160, 66 P. 526 (1901); *State v. Roy*, 41 N.M. 308, 312, 68 P.2d 162, 165 (1937)). The defendant has raised a statute which could potentially render the ESD's claim stale:

> [t]he above limitations and provisions [Chapter on Limitation of Actions] shall not apply ... but shall in other respects, be applicable in all other actions brought by or against all bodies corporate or politic, except when otherwise expressly declared. N.M.Stat.Ann. § 37–1–19 (Repl.Pamp.1990).

*Standhardt*, the leading case interpreting this statute, held that statutes of limitation do not run against the state, but do run against "bodies corporate or politic." *Standhardt*, 80 N.M. at 545, 458 P.2d at 798. In doing so, *Standhardt* rejected the earlier "governmental function" rationale and instead focused on deciphering the express statutory provision "bodies corporate or politic." *Id.* at 550, 458 P.2d at 802. The court in *Standhardt* held that the "only concern" in determining if bodies corporate or politic were subject to the statute of limitations was whether "the plaintiff was the real party in interest in the action." *Id.* Therefore, if the state is the real party in interest the statute of limitations does not apply. If, however, the state is only a "nominal party of record and its name is used to enforce a right which enures solely to the benefit of the body corporate or politic, then the statute of limitations can be pled as a bar to the action." *Id.* (citing *State v. Roy*, 41 N.M. 308, 68 P.2d 162 (1937)). To determine the real party in interest the court must look to the facts in the record and not merely rely on the name in which the action is brought. 51 Am.Jur.2d *supra* at § 411. In *Standhardt* the local school board was subject to the statute of limitations because the obligation sued upon was "owed solely to the district as administered by appellee Board." *Id.* at 551, 458 P.2d at 803.

The defendant asserts that the ESD is "merely a conduit for federal funds" the State is not the real party in interest, and the statute of limitations applies. This argument fails.

The ESD can be distinguished from the *local* school board at issue in *Standhardt*. The ESD was created to remedy the "serious menace" of economic insecurity. N.M.Stat.Ann. § 51–1–3 (Repl.Pamp.1991) (declaration of *state* public policy). The ESD administers the compulsory fund contributed to by all New Mexico employers "to be used for the benefit of persons unemployed through no fault of their own." *Id.* The ESD is a division of the New Mexico Department of Labor, managed by the Secretary of Labor. *See,* N.M.Stat.Ann. §§ 9–18–4 and 9–18–6 (Repl.Pamp.1991). Therefore, the ESD's suit to collect from Ms. Valdez is an action for the benefit of a state fund, not for a private individual or corporation, and the State is the real party in interest. Second, even if the ESD is a "federal conduit" the federal funding provisions contain no applicable statute of limitation. *See e.g.,* 26 U.S.C. §§ 3301–3311 (1989); 42 U.S.C. §§ 501–504 (1991); 5 U.S.C. §§ 8505, 8507 (1967). Finally, even if the ESD is considered a "federal conduit" making the federal government the real party in interest, the defendant's argument fails because state statutes of limitation do not apply to the federal government. *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1939).

The second issue to be addressed is whether a state or federal statutory provision exists which would limit the time in which the ESD can assess or collect its claim. A reading of the Unemployment Compensation Statute, N.M.Stat.Ann. §§ 51–1–1—to—57 (Repl.Pamp.1991) uncovers no such provision. Section 51–1–38

sets forth the penalties and liability for benefit overpayment. Specifically, subsection (A) prohibits a person from receiving unemployment compensation by "false statement or representation." § 51-1-38(A). Section 51-1-38(E) states that any overpayment is collected by the department in accordance with § 51-1-36(B). This section states the process for collection by the ESD but does not limit the time for assessment or collection by the ESD. The Court has diligently researched federal law, and similarly has found no provision which would limit the claim of the ESD.

The defendant's motion to dismiss is denied. This matter will proceed to a trial on the merits. This memorandum opinion constitutes the Court's Findings of Fact and Conclusions of Law. F.R.Bankr.P. 7052. An appropriate order shall enter.